1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBIN LYNN BIRDSONG VINCENT,              No.  2:21-cv-926-KJN

12                    Plaintiff,               ORDER

13         v.                                  (ECF Nos. 15/17, 18.)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion,

19   plaintiff contends the Administrative Law Judge erred in finding her alleged mental impairments

20   non-severe at step two and in omitting any mental limitations from her residual functional

21   capacity.  The Commissioner opposed and filed a cross-motion for summary judgment.

22        For the reasons that follow, the court DENIES plaintiff's motion for summary judgment,

23   GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the

24   Commissioner.

25   ///

26   ///

27   ——————————————

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 5, 7, 8.)

1

## I.      RELEVANT LAW

2          The Social Security Act provides benefits for qualifying individuals with disabilities.

3 Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to

4 "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) (Title II).

5 An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2]

6 20 C.F.R. § 404.1520(a)(4).

7          A district court may reverse the agency's decision only if the ALJ's decision "contains

8 legal error or is not supported by substantial evidence."  Ford v. Saul, 950 F.3d 1141, 1154 (9th

9 Cir. 2020).  Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e.,

10 "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11 Id.  The court reviews the record as a whole, including evidence that both supports and detracts

12 from the ALJ's conclusion.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the

13 court may review only the reasons provided by the ALJ in the decision, and may not affirm on a

14 ground upon which the ALJ did not rely.  Id.  "[T]he ALJ must provide sufficient reasoning that

15 allows [the court] to perform [a] review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

16          The ALJ "is responsible for determining credibility, resolving conflicts in medical

17 testimony, and resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to

18 more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id.  Further, the

19

20

---

[2]         The sequential evaluation is summarized as follows:

21

        **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
        claimant is found not disabled.  If not, proceed to step two.

22      **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
        three.  If not, then a finding of not disabled is appropriate.

23      **Step three**: Does the claimant's impairment or combination of impairments meet
        or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

24      claimant is automatically determined disabled.  If not, proceed to step four.

        **Step four**:  Is the claimant capable of performing past relevant work?  If so, the

25      claimant is not disabled.  If not, proceed to step five.

        **Step five**:  Does the claimant have the residual functional capacity to perform any

26      other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

27

28 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The burden of proof rests with the
claimant through step four, and with the Commissioner at step five.  Ford, 950 F.3d at 1148.

1  court may not reverse the ALJ's decision on account of harmless error.  Id.

2  **II.      BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

3          On December 27, 2018, plaintiff applied for Disability Insurance Benefits, alleging

4  disability beginning September 3, 2018.  (Administrative Transcript ("AT") 166-169.)  Plaintiff

5  claimed disability due to "Arthritis Back, Arms & Hands; Generalized Anxiety Disorder; Major

6  Depressive Disorder, and [a] Right Shoulder Problem."  (See AT 93.)  Plaintiff's application was

7  denied initially and upon reconsideration, and she sought review with an ALJ.  (AT 93; 100; 106.)

8  At an August 2020 telephonic hearing, Plaintiff testified about her conditions, and a vocational

9  expert ("VE") testified regarding the ability of a person with certain limitations to perform

10  various jobs.  (See AT 30-62.)

11          On September 2, 2020, the ALJ issued a decision determining plaintiff was not disabled.

12  (AT 15-25.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful

13  activity since September 3, 2018.  (Id.)  At step two, the ALJ determined plaintiff had the

14  following severe impairments: cervical degenerative disc disease; lumbar degenerative disc

15  disease; status-post right humerus fracture; right shoulder degenerative joint disease, status-post

16  arthroscopic surgery.  (Id.)

17          Regarding plaintiff's allegations of mental impairments (depression and anxiety), the ALJ

18  found they caused no more than minimal and were therefore non-severe.  The ALJ noted

19  plaintiff's past treatment, mental status exams, her prior failures to take her medications as

20  prescribed, her physicians' lack of concerns from her treatment providers, certain daily activities

21  demonstrating intact mental faculties, and the then-recent passing of her husband.  (AT 18-19.)

22  The ALJ found mild limitations in each of the Paragraph B criteria, discussing plaintiff's medical

23  records and subjective reports when considering her ability to understand, remember, and apply

24  information; interact with others; concentrate, persist or maintain pace; and adapt or manage

25  herself.  (AT 19-20.)  Finally, the ALJ recognized the opinions expressed in the prior

26  administrative medical findings, that plaintiff had severe mental impairments limiting her to

27  "simple, routine tasks and instructions with only routine changes in work environment."  (AT 20.)

28  The ALJ found these opinions unpersuasive, however, reasoning that (1) initial reviewer based

1   this opinion on plaintiff's emotional state at therapy sessions around the time of her husband's

2   passing, but the reconsidering reviewer noted stabilization; and (2) neither reviewer discussed

3   plaintiff's clinical findings or more recent-medical evidence.  Thus, given the mild paragraph B

4   findings and evidence in the record, the ALJ found plaintiff's depression and anxiety non-severe.

5   (Id.)

6          At step three, the ALJ determined plaintiff's impairments did not meet or medically equal

7   the severity of an impairment listed in Appendix 1.  (AT 20; citing 20 C.F.R. Part 404, Subpart P,

8   Appendix 1).  The ALJ then found plaintiff had the residual functional capacity ("RFC") to

9   perform light work, except she could:

10          lift and/or carry 10 pounds frequently and 20 pounds occasionally[;]
            stand and/or walk for six hours in an eight-hour workday with
11          normal breaks and sit for six hours in an eight-hour workday with
            normal breaks[;] occasionally climb ladders, ropes, and scaffolds[;]
12          frequently climb ramps and stairs, balance, stoop, kneel, crouch,
            and crawl[; and] occasionally reach overhead with the right upper
13          extremity.

14   (AT 21.)  In crafting this RFC, the ALJ stated he considered plaintiff's intense, persistent, and

15   limiting symptoms alongside the medical evidence and medical opinions.  (AT 21-23.)  In the

16   RFC section, the ALJ focused almost entirely on plaintiff's physical impairments, discussing

17   plaintiff's subjective symptom testimony, the medical evidence, and physicians' opinions.  (See

18   id.)  The ALJ concluded plaintiff was capable of performing past relevant work as an accounting

19   clerk and administrative clerk, and was therefore not disabled.  (AT 23-24.)

20          Plaintiff then filed this action requesting judicial review of the Commissioner's final

21   decision; the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 15, 17, 18, 19.)

22   **III.    ISSUE PRESENTED**

23          Plaintiff contends the ALJ erred in his step-two analysis regarding her mental limitations,

24   as well as excluding any mental limitations from her RFC, arguing the evidence established more

25   than minimal limitations.  Plaintiff seeks a remand for a new hearing.  (ECF Nos. 17, 19.)

26          The Commissioner disagrees, arguing the ALJ properly found no severe mental

27   impairments and therefore no mental RFC limitations.  Thus, the Commissioner contends the

28   decision as a whole is supported by substantial evidence.  (ECF No. 18.)

1    **IV.   DISCUSSION**

2         **Legal Standards, Mental Impairment Evaluation at Step Two**

3         At step two, the ALJ is to distinguish between those impairments that are "severe" and

4    "non-severe."  See 20 C.F.R. § 404.1520.  A "severe" impairment is one that significantly limits

5    the physical or mental ability to perform basic work activities.  Id.  "An impairment or

6    combination of impairments may be found 'not severe' only if the evidence establishes a slight

7    abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v.

8    Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  When asserting a condition has more than a

9    minimal effect, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot

10   rely solely on symptom testimony.  20 C.F.R. 404.1529(a).  However, the step two assessment is

11   a "de minimus screening device to dispose of groundless claims," and the ALJ's conclusion must

12   be supported by the medical evidence in the record.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th

13   Cir. 1996).  Even when evidence in the record is "susceptible to more than one rational

14   interpretation," the ALJ's findings are determinative when "supported by inferences reasonably

15   drawn from the record."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

16        Allegations of disability due to any mental impairment requires an ALJ "to follow a

17   special psychiatric review technique."  Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011); 20

18   C.F.R. § 404.1520a(a).  This includes rating the degree of functional limitation resulting from any

19   impairments in four main areas:  (1) understanding, remembering, or applying information;

20   (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) and adapting or

21   managing oneself.  20 C.F.R. § 404, Subpt. P, Appx. 1 (Paragraph B).  To be deemed disabled

22   under the Listings for (relevant here) depression and anxiety, the ALJ checks for an 'extreme'

23   limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  See Id.

24   at Listing 12.00A "Mental Disorders"; see also 20 C.F.R. § 404.1520a(c)(4) and (d)(1)-(3)

25   (noting use of a five-point scale of "[n]one, mild, moderate, marked, and extreme," and generally

26   directing that a rating of "none" or "mild" will result in a non-severe finding, while "severe"

27   findings require a comparison to the Listings and consideration at the RFC stage).

28   ///

5

1    **Legal Standards, Medical Opinions and Prior Administrative Medical Findings**

2         For applications filed on or after March 27, 2017, an ALJ need "not defer or give any

3    specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

4    administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including

5    those from [a claimant's] medical sources." See 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to

6    evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In

7    determining how "persuasive" the opinions of a medical source or PAMF is, an ALJ must

8    consider the following factors:  supportability, consistency, treatment relationship, specialization,

9    and "other factors."  § 404.1520c(b), (c)(1)-(5).

10        Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for

11   each factor varies.  § 404.1520c(a)-(b).  In all cases, the ALJ must at least "explain how [she]

12   considered" the supportability and consistency factors, as they are "the most important factors."

13   § 404.1520c(b)(2).  For supportability, the regulations state: "[t]he more relevant the objective

14   medical evidence and supporting explanations presented by a medical source are to support his or

15   her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the

16   opinion or PAMF] will be."  § 404.1520c(c)(1).  For consistency, the regulations state: "[t]he

17   more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

18   evidence from other medical sources and nonmedical sources in the claim, the more persuasive

19   [the opinion or PAMF] will be."  § 404.1520c(c)(2).  The ALJ is required to articulate findings on

20   the remaining factors (relationship with claimant, specialization, and "other") only where "two or

21   more medical opinions or prior administrative medical findings about the same issue" are "not

22   exactly the same," and both are "equally well-supported [and] consistent with the record."

23   § 404.1520c(b)(2)&(3).  An ALJ may address multiple opinions from a single medical source in

24   one analysis.  § 416.920c(b)(1) ("source-level articulation").  "[I]n interpreting the evidence and

25   developing the record, the ALJ does not need to discuss every piece of evidence."  Howard ex rel.

26   Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

27       **Analysis**

28        Here, plaintiff argues the ALJ erred at step two and at the RFC stage in resolving her

mental limitations, pointing to the ALJ's analysis of the Paragraph B factors and, underlying this, his treatment of the medical evidence and opinions expressed in the prior administrative medical findings ("PAMF"). For support, plaintiff points to the longitudinal record and her symptom testimony demonstrating her years-long struggle with anxiety and depression, as well as the finding of "severe" mental health impairments by the reviewing psychological consultants at the initial and reconsideration stages. Plaintiff argues the ALJ made patently false assertions regarding the PAMFs' analyses, failed to support his unpersuasive finding regarding these opinions with relevant citations to the record during a 12-month period, and inappropriately disregarded portions of plaintiff's testimony regarding her ability to live and work. Plaintiff argues the only way to rectify these alleged errors is by remanding to an ALJ for a new decision. (ECF No. 17.)

The undersigned finds that, despite some lack of clarity in the written decision, the ALJ's rationale can be discerned and is supported by substantial evidence. See Treichler v. Comm'r, 775 F.3d 1090, 1099 (9th Cir. 2014) (describing an ALJ error as harmless if "the ALJ's path may reasonably be discerned despite the error."). The ALJ's analysis of plaintiff's alleged mental limitations is contained wholly in the section dedicated to the step-two section. (AT 18-20.) Given the ALJ's findings of "mild" in each of the four Paragraph B criteria, as well as his omission of any mental limitations from plaintiff's RFC, the undersigned reads the decision as one determining plaintiff's alleged mental impairments have no effect on her ability to work. Treichler, 775 F.3d at 1099. Because plaintiff ultimately disputes whether the ALJ provided an accurate and logical bridge between his findings and the evidence cited, the court focuses on the decision's treatment of this evidence. See Smolen, 80 F.3d at 1290 (noting that a step-two inquiry must be supported by the medical evidence in the record); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting the RFC determination must consider those limitations for which there was record support).

First, as to the ALJ's treatment of the evidence in the record, the undersigned finds that while his analysis could have been more clear, sufficient discussion of the medical record was provided, such that it does not appear the ALJ was wholly ignoring supportive evidence. See

7

1    Lambert, 980 F.3d at 1277 ("[T]he ALJ must provide sufficient reasoning that allows [for]

2    review."). The ALJ noted plaintiff's treatment regimen for her depression and anxiety, including

3    medication and therapy, and considered aspects of those records both supporting and detracting

4    from plaintiff's alleged mental impairments. (See AT 18-19.) Supporting the ALJ's findings,

5    this included a discussion of records from 2018 showing plaintiff remained generally cooperative,

6    engaged, and feeling well during therapy. (AT 19, citing AT 257 (plaintiff's active engagement

7    in treatment "going well for her therapy"); 268 (plaintiff interactive during group discussion and

8    gave input); 274 (presenting to therapy groomed, clean, oriented, fair attitude, engaged); 287

9    (noting plaintiff was interactive during therapy session, understood topics); 347 (presenting as

10   well groomed, alert, oriented, fair insight and awareness, clear speech, and feeling like she was

11   able to communicate well in therapy).) The ALJ also noted how plaintiff, in these 2018 sessions,

12   failed to maintain her medication, and this combined with her bereavement of her husband likely

13   exacerbated her symptoms during that time. (AT 18-19, citing AT 283 (noting plaintiff "admits

14   she almost never takes the [medications] prescribed for her").) The ALJ's discussion also

15   included records from 2019, where plaintiff's mental state and medication compliance improved

16   somewhat. (AT 19, citing AT 760 ("Her mood is good and she is taking her medications

17   consistently.").) Most important, the ALJ's decision contains explicit cites to records generated

18   between April of 2019 and May of 2020 supporting his analysis (records not available to the

19   PAMFs, as discussed below). This includes a July 2019 record demonstrating plaintiff was

20   "currently working as an accountant" which was "going well" (AT 937); would continue with

21   medications and therapy (AT 938); presented as alert and cooperative with no appearance,

22   behavior, or mood issues (AT 939-40); and had no issues with affect, speech, thought or

23   cognition (AT 941-42). The ALJ cited similar records in June 2019 (AT 949, noting no

24   depression, good mood, and medication compliance); January 2020 (AT 959, noting among other

25   things no depression, good medication compliance, and fair judgment and insight); and May 2020

26   (AT 970, noting among other things plaintiff was feeling better with medication, less anxious,

27   sleeping better). The ALJ cited at least one of these records in the introductory paragraph leading

28   into the Paragraph B analysis (AT 18-19), as well as in the analysis of each of the four Paragraph

1   B criteria (AT 19-20).[3]  Finally, throughout this analysis, the ALJ was careful to note plaintiff's

2   subjective reports of memory problems, heightened emotional state during therapy, and diagnoses

3   of depression and anxiety, such that the court does not find the ALJ was cherry picking the record

4   by wholly ignoring evidence supporting plaintiff's claim.  (See AT 18-19, citing e.g., AT 257

5   (2018 record showing depression and anxiety "interfering with daily function"), and AT 32-56

6   (hearing testimony).)

7          Plaintiff urges the court to consider other instances in the record, not cited by the ALJ,

8   demonstrating plaintiff was at times less than 100%.  However, these instances supporting

9   plaintiff's averments are of a similar nature to those explicitly considered by the ALJ.  (Cf., e.g.,

10  AT 963-67 (noting a variation in both mood and medication compliance between mid-2019 and

11  mid-2020); with, e.g., AT 19, citing AT 959, 970 (noting continued effect of depressive disorder

12  and increase in anxiety).)  Thus, court cannot read plaintiff's call as anything other than a request

13  for the undersigned to reweigh the evidence, which is outside of the court's purview.  Molina, 674

14  F.3d at 1111 (noting that even when evidence in the record is "susceptible to more than one

15  rational interpretation," the ALJ's findings are determinative when "supported by inferences

16  reasonably drawn from the record"); Ford, 950 F.3d at 1154 (reminding that where evidence is

17  susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld").

18         Second, plaintiff argues the ALJ's treatment of the PAMFs was in error.  Specifically,

19  plaintiff challenges the ALJ's unpersuasive findings regarding the psychological consultants'

20  assignment of severe mental impairments.  (AT 64-74; 76-87.)  Plaintiff's application was denied

21  _____

[3] The Commissioner provides in its cross-motion a string cite to medical records generally
22  supporting the ALJ's findings.  However, the Commissioner cites to more records than what the
    ALJ explicitly considered.  (See ECF No. 18 at 10-11 and 13).  Plaintiff takes issue with any
23  reliance on those records not cited by the ALJ.  (See ECF 19 at 1-2.)

     Plaintiff is correct that the court cannot affirm on a ground not expressed by the ALJ.  See Orn
24  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  However, the court reads the Commissioner's
    citation to these records not as an argument to consider an additional "ground," but simply as
25  additional evidence consistent with the grounds expressed in the ALJ's decision.  The court sees
    no issue with the Commissioner's inclusion of these additional citations.  See Howard ex rel.
26  Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and
    developing the record, the ALJ does not need to discuss every piece of evidence.").  Regardless,
27  and for clarity, the court refrains from citing to these additional records in this order—despite
    their apparent consistency with the ALJ's explicit findings.
28

1   at the initial and reconsiderations stages, even though the two psychological consultants each

2   found plaintiff moderately limited in several of the Paragraph B criteria.  The first consultant

3   opined, after reviewing records up through early 2019, plaintiff was capable of maintaining

4   concentration, persistence, and pace with "short and simple instructions," interacting with others

5   "in SRT [simple repetitive task] settings," and adapting to changes appropriately with "some

6   [unspecified] limitations."  (AT 72.)  The second consultant reviewed records through June of

7   2019, and opined plaintiff could maintain concentration, persistence, and pace with "a 2-step

8   command involving simple instructions," and of adapt to " simple and routine changes."  (AT

9   85.)  The ALJ found these opined limitations unpersuasive for, among other reasons, the fact that

10  neither "had access to more recent evidence, which provide[s] a longitudinal picture and a greater

11  number of data points[and which shows] intact cognition and memory, stabilization of mood and

12  that the claimant was able to live independently and secure employment."  (AT 20.)

13        The court interprets this conclusion as a finding that the opinions in the PAMFs lacked

14  consistency and finds the ALJ's analysis satisfies the applicable regulations and legal standards.

15  Regarding consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior

16  administrative medical finding(s) is with the evidence from other medical sources and

17  nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be."  20 C.F.R.

18  § 404.1520c(c)(2).  As noted above, the ALJ sufficiently discussed plaintiff's medical records,

19  generated both before and after the PAMF reviews.  The ALJ found that while plaintiff was not at

20  all times wholly free of her mental impairments, they appeared to be only mild in nature.  Where

21  conflicts exist regarding medical testimony and ambiguities in the record, it is for the ALJ to

22  resolve.  Ford, 950 F.3d at 1154.  The court has no power to reweigh the evidence.  Molina, 674

23  F.3d at 1111 (noting that even when evidence in the record is "susceptible to more than one

24  rational interpretation," the ALJ's findings are determinative when "supported by inferences

25  reasonably drawn from the record.").

26        Plaintiff is correct that the decision contains some factual inaccuracies and broadly

27  worded statements.  For example, the ALJ states in his Paragraph B analysis that "[n]one of

28  [plaintiff's] treatment providers documented difficulty getting along with the claimant or

inappropriate behavior." (AT 19.)  However, plaintiff pointed to at least one instance where plaintiff's therapist "had [plaintiff] wait for 7 mins [in the waiting area], as she has the ability to yell and scream at staff when you don't come to get her right away." (AT 762.)  Despite this fact, the analysis regarding plaintiff's ability to interact with others cites to other evidence supporting that determination.  (See AT 19.)  Also for example, when considering the opinions expressed in the PAMFs, the ALJ states that "[n]either reviewer discussed actual mental status clinical findings[.]" (AT 20.)  This seems inaccurate, as the initial and reconsideration determinations do contain the reviewers' discussions of plaintiff's progress notes across the medical record.  (See AT 67-68; 79-80.)  The court supposes the ALJ intended to say that these PAMFs did not provide a detailed rationale of their severe findings, as each reviewer simply answered yes/no, found limitations of "moderately" to "not significantly," or found work-related limitations without explanation.  (See AT 71-72; 84-85.)  Thus, even crediting plaintiff's arguments, such errors are harmless, given that the ALJ provided sufficient reasoning for his unpersuasive findings on the PAMFs and sufficient citation to the record.  Ford, 950 F.3d at 1154 (noting the court may not reverse the ALJ's decision on account of harmless error).  In reviewing the decision on the record as a whole, Luther, 891 F.3d at 875, the ALJ's path can be reasonably discerned.  Treichler, 775 F.3d at 1099.

## V.   CONCLUSION

Having resolved plaintiff's claims of error, the court finds the ALJ's decision is supported by substantial evidence in the record as a whole.  Buck, 869 F.3d at 1048.  Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 15/17) is DENIED;

2.   The Commissioner's cross-motion (ECF No. 18) is GRANTED; and

3.   The final decision of the Commissioner is AFFIRMED.

Dated:  May 24, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

vinc.926

11